IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAUL V. GUILLIOT (BOP Register No. 14208-035), | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:17-cv-2701-M-BN |
| D.J. HARMON, Warden, ET AL., | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Saul V. Guilliot, a federal prisoner, initially brought this *pro se* action under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq. See* Dkt. No. 3. And his case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn.

On August 27, 2018, the Court, accepting the undersigned's recommendation, granted Defendants D.J. Harmon, Dr. Jennifer Caperton, G. Schanfish, and Dr. Kevin McDermott's motion to dismiss in part, dismissing all claims but Guilliot's RFRA claim without prejudice to his filing an amended complaint by September 17, 2018. *See* Dkt. No. 21; *see also* Dkt. No. 20. Defendants answered on September 10, 2018. And Guilliot failed to file an amended complaint by the Court's deadline.

As directed by the October 2, 2018 Order Requiring Motion for Summary

Judgment and Regarding Discovery and Briefing [Dkt. No. 25], Defendants moved for summary judgment, requesting that the Court dismiss Guilliot's RFRA claim with prejudice, *see* Dkt. Nos. 26, 27, & 28. Guillot responded. *See* Dkt. Nos. 24 & 35. And Defendants filed a reply in support of their motion for summary judgment. *See* Dkt. No. 36.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss the RFRA claim – and thus this action – with prejudice.

## Applicable Background

Guilliot, who affiliates with the Wican faith, is a federal prisoner, incarcerated at FCI Seagoville, and is serving a 151-month sentence for receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). *See United States v. Guilliot*, No. 6:08-cr-334 (01) (W.D. La), *aff'd*, 383 F. App'x 416 (5th Cir.) (per curiam), *cert. denied*, 562 U.S. 1017 (2010). His projected release date is December 21, 2019. *See* Dkt. No. 28 at 105, 108-09.

The sole remaining issue is whether Defendants, acting in their official capacities, violated Guilliot's rights under RFRA by denying him access to tarot cards containing nude images. *See* Dkt. No. 3, ¶¶ 8-11, 43.

And the undesigned draws the applicable background set out below from Defendants' brief in support of the summary judgment motion [Dkt. No. 27], supported by citation to their appendix [Dkt. No. 28], facts which Guilliot states he "largely agrees with," except Defendants' assertion "that the Rider-Waite deck contains images

of nude children," Dkt. No. 34 at 4.

> After serving time at several other federal facilities, Plaintiff was transferred to FCI Seagoville and arrived there on November 20, 2014. Shortly after Plaintiff arrived at FCI Seagoville, staff from the institution's Sex Offender Management Program explained the Correctional Management Plan (CMP) process to Plaintiff. Due to behaviors documented in Plaintiff's files and Plaintiff's disciplinary record while at his prior institutions, including "possession of images of adolescents" and "sexually provocative photos of women," Plaintiff was issued a formal CMP warning. Staff explained to Plaintiff that it was determined on a case-by-case basis what behavior was "risk-relevant" so as to prompt issuance of a CMP. ...
>
> On July 9, 2015, approximately seven months after his arrival at FCI Seagoville, a CMP was generated for Plaintiff, which he signed and reviewed on August 7, 2015. The CMP alleged that Plaintiff, while at FCI Seagoville, had submitted an inter-library loan request for a book entitled *The Girl*, by Samantha Geimer, which is the author's personal account of "having been drugged and sexually assaulted when she was 13-years-old." The plan explained that it imposed restrictions "in the interest of ensuring the good order, discipline and security of the institution and to protect the public." The CMP restricted Plaintiff from, among other things, ordering, purchasing, or requesting "any materials ... that contain or could reasonably be expected to contain any depiction ... of sexual content, nudity, or pictures of models who are scantily clad ... or in sexually provocative poses or positions." The plan further stated that Plaintiff would "not possess or view materials ... that are risk-relevant to you, even if those materials are available to other inmates at this institution (e.g., available in the Education library, etc.)." The CMP warned that "any personal property that is deemed to be risk relevant ... may be confiscated as contraband." As of November 18, 2016, Plaintiff was removed from the CMP. However, Plaintiff was instructed that future incidents of risk-relevant behavior could result in the CMP being reinstated. ...
>
> Plaintiff sent an electronic request, on January 30, 2017, to Defendant Schanfish, FCI Seagoville's supervisory chaplain, asking him to justify the prison's alleged practice of denying inmates cards from tarot decks that contain nudity. Indeed, on one occasion in 2013, FCI Seagoville staff had denied a different inmate's request for a tarot deck known as the Rider-Waite Tarot Deck. The supervisory chaplain had reviewed cards in that deck and determined that certain cards contained images of nude adults and children, including uncovered female breasts and female and male genitalia. FCI Seagoville staff notified the inmate that

the request for the Rider-Waite Tarot Deck was denied because the deck contained nudity and violated policy.

In Plaintiff's January 30, 2017 message, he noted, "[m]y faith includes the sacredness of human bodies and sexuality." Two days later, the prison's Religious Services department responded by referencing two BOP program statements: first, Section 7(c) of BOP Program Statement 5360.09, entitled "Religious Beliefs and Practices," which states that, among other religious practices, "nudity" is "never authorized"; and, second, Section 4.6.1 of BOP Program Statement 5324.10, entitled "Sex Offender Programs," which permits prison officials to restrict inmates from possessing, among other items, "[i]tems that may be used as sexual paraphernalia (e.g., photographs, pictures, or drawings depicting adults or children in sexually explicit or suggestive poses or situations)" and "[a]ny other personal property deemed inappropriate by the SOMP [Sex Offender Management Program] Coordinator due to its association with the inmate's risk to engage in sexually offensive behavior." According to Plaintiff, FCI Seagoville's chaplain also personally explained to him that tarot decks containing nudity were not allowed "due to the graffic [sic] pictures and Seagoville being SOMP [Sex Offender Management Program] yard." The chaplain informed Plaintiff that there were many other tarot decks Plaintiff could order that do not contain nudity, and that one such deck was available in the FCI Seagoville chapel for inmates to check out. Plaintiff agrees that the chaplain "allows pre-approved [tarot] decks."

On March 2, 2017, Plaintiff was again issued a CMP. The CMP noted that, on January 30, 2017, Plaintiff had sent an electronic message to the Religious Services department in which he disputed the chaplain's decision to remove cards containing nudity from tarot decks. The plan further noted that, on February 2, 2017, a routine search of Plaintiff's property revealed that he was "in possession of two magazines and several loose magazine pages containing a preponderance of scantily clad female models in bikinis and posed in sexually provocative positions," including "at least one image of nudity depicting a female model's buttocks" and "images depicting female models engaged in sex acts with adult men and women." According to the CMP, the magazines contained instructions for ordering pornographic videos. Plaintiff was also found in possession of a photograph of a young "female model wearing short cut shorts and a revealing shirt that partially exposes her breast." Plaintiff admits that at least some of the images that he had "contained implicit, rather than explicit, sexual content." The restrictions listed in the latter CMP were similar to the restrictions in the earlier one. As with the previous CMP, the plan explained that the restrictions were "in the interest of ensuring the good order, discipline and security of the

-4-

> institution and to protect the public." Because Plaintiff had been removed from his prior CMP less than four months earlier, the latter CMP "remain[s] in effect until Plaintiff demonstrates at least two years of clear conduct with no violations of the Plan."

Dkt. No. 27 at 7-11 (citations and footnote omitted).

Defendants agree that Guilliot has exhausted administrative remedies. *See id.* at 11-14.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to

meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of*

*Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could

not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he traditional leniency afforded to a pro se plaintiff does not excuse [Plaintiff] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd.*

*of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).

That said, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

## Analysis

The Court's decision on the motion to dismiss included an extensive discussion of RFRA and its later-enacted sister statute, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* – which applies to state- and local-government action. *See Guillot v. Harmon*, No. 3:17-cv-2701-M-BN, 2018 WL 4084265, at *4-*7 (N.D. Tex. July 25, 2018), *rec. accepted*, 2018 WL 4075761 (N.D. Tex. Aug. 27, 2018).

While that full discussion need not be repeated here, the undersigned notes that, in the context of this case, cases interpreting RLUIPA are equally applicable to RFRA. *See Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) ("RLUIPA [ ] allows prisoners 'to seek religious accommodations pursuant to the same standard as set forth in RFRA.'" (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006))); *Lindh v. Warden, Fed. Corr. Inst., Terre Haute, Ind.*, No. 2:14-cv-00142-JMS-DKL, 2016 WL 4528478, at *6 (S.D. Ind. Aug. 30, 2016) ("RFRA and RLUIPA 'are substantively identical with respect to prisoners' entitlements,'" as "[b]oth statutes define 'exercise of religion' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief'" (quoting first *Whitfield v. Ill. Dep't of Corrs.*, 237 F. App'x 93, 94 (7th Cir. 2007) (per curiam), then *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 696 (2014))).

> Under RFRA, the Federal Government may not, as a statutory matter, substantially burden a person's exercise of religion, "even if the burden results from a rule of general applicability." § 2000bb-1(a). The only exception recognized by the statute requires the Government to satisfy the compelling interest test – to "demonstrat[e] that application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." § 2000bb-1(b).

*Gonzales*, 546 U.S. at 424.

But Guilliot must first show that Defendants' preventing his access to a Rider-Waite tarot deck "implicates his religious exercise." *Holt*, 135 S. Ct. at 862 (explaining that RLUIPA – like RFRA – "protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief'" (citing 42 U.S.C. § 2000cc-

5(7)(A))); *see also* 42 U.S.C. § 2000bb-2(4).

Guillot's requesting access to these specific tarot cards "must be sincerely based on religious belief and not some other motivation," *Holt*, 135 S. Ct. at 862 (citing *Hobby Lobby*, 573 U.S. at 717 n.28); *see, e.g.*, *Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at *4 (W.D. Wis. Aug. 15, 2017) ("Tanksley's interest in the Initiatory Tarot must be rooted in a sincere religious belief, rather than a purely secular interest, and that it is not merely a pose adopted to acquire material that would otherwise be banned."), *aff'd*, 723 F. App'x 370 (7th Cir. 2018) (per curiam).

And Gulliot must show that being prevented access to a Rider-Waite tarot deck "substantially burdened [a sincerely held] exercise of religion." *Holt*, 135 S. Ct. at 862; *see also Louisiana Coll. v. Sebelius*, 38 F. Supp. 3d 766, 777 (W.D. La. 2014) ("Under RFRA, Plaintiff bears the initial burden of establishing 'the existence of a substantial interference with the right of free exercise.' *Diaz v. Collins*, 114 F.3d 69, 72 (5th Cir. 1997). The sincerity of a claimant's belief in a particular religious exercise is an essential and threshold element of this burden. *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013).").

Here, Guilliot asserts, through a verified complaint, that Defendants have denied him "materials[ – the tarot deck at issue – ]necessary for the practice of his faith." Dkt. No. 3 at 3; *see also id.* at 13. Considering the individualized inquiry required by *Holt* – which examined "religious exercise" under RLUIPA, a statutory definition shared with RFRA – this may be enough evidence to establish a prima facie RFRA violation. *See, e.g.*, *Tanksley*, 2017 WL 3503377, at *5 ("[U]nder RLUIPA[ – just

-11-

as under RFRA – ]the question is whether the specific proposed religious exercise is substantially burdened, not whether the religious exercise is one that could be prohibited without making it too difficult to practice that religion. *Holt* reasoned from this definition to conclude that it does not matter whether the inmate has other means of practicing his religion, whether the inmate's religion actually compels the proposed practice, or whether the proposed practice is in the main stream of the religion. 135 S. Ct. at 862-63. Under *Holt*, RLUIPA[ – like RFRA – ]protects every religious preference, no matter how idiosyncratic or how minor to the inmate's professed religion."); *accord Tagore*, 735 F.3d at 328 ("[E]ach case turns on its particular facts. The specific religious practice must be examined rather than the general scope of applicable religious tenets, and the plaintiff's 'sincerity' in espousing that practice is largely a matter of individual credibility. In fact, the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged. As *Moussazadeh* explains, '[t]hough the sincerity inquiry is important, it must be handled with a light touch, or "judicial shyness."' '[E]xamin[ing] religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread.' Both before and following *Moussazadeh*, claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions." (quoting and citing *Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 791, 792 (5th Cir. 2012))).

"Once a prima facie case is established, the government must show a compelling interest in enforcing that provision and that its means are the least restrictive to achieve its objectives." *Tagore*, 735 F.3d at 330 (citations omitted).

But, as the Fifth Circuit has explained in the context of RLUIPA,

> [r]eligious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). Costs, limited resources, and prison security are all compelling state interests. *Id.* However, deference is not unlimited and "'policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the act's requirements.'" *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (quoting S. REP. NO. 103-111, at 10, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1900) (discussing the Religious Freedom Restoration Act, predecessor to RLUIPA); *see also Holt*, 135 S. Ct. at 867 ("Indeed, prison policies 'grounded on mere speculation' are exactly the ones that motivated Congress to enact RLUIPA.").
>
> The least-restrictive-means standard is "exceptionally demanding, and requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 135 S. Ct. at 864 (quotation omitted and alteration adopted). The Government must also demonstrate that the "compelling interest test" is satisfied when applying the challenged law to the "particular claimant whose sincere exercise of religion is being substantially burdened." *Id.* at 863 (quotation omitted). Thus RLUIPA requires a court to scrutinize "'the asserted harm of granting specific exemptions to particular religious claimants'" and look "'to the marginal interest in enforcing' the challenged government action in that particular context." *Id.* (quoting *Hobby Lobby*, 573 U.S. at 726-27).

*Davis v. Davis*, 826 F.3d 258, 264-65 (5th Cir. 2016) (citations modified).

And, as the Fifth Circuit more recently explained, "[f]or both prongs of its strict scrutiny test, RLUIPA" – the "text [of which] mirrors that of RFRA" –

> mandates an individualized inquiry. The compelling-interest prong requires the government to "demonstrate that the compelling interest test is satisfied through application of the challenged law to ... *the particular claimant* whose sincere exercise of religion is being substantially burdened." The interest cannot be "broadly formulated" or "grounded on mere speculation, exaggerated fears, or post-hoc rationalizations." The least-restrictive-means prong is similarly context-specific. When, for

> example, a particular claimant shows enough trustworthiness, such that he will not likely exploit his religious-based exemption to undermine prison security, withholding that exemption is unlikely to be the least restrictive means.

*Tucker v. Collier*, 906 F.3d 295, 301 (5th Cir. 2018) (quoting first *Holt*, 135 S. Ct. at 863, then *Ware v. La. Dep't of Corr.*, 866 F.3d 263, 268 (5th Cir. 2017); citing *Davis*, 826 F.3d at 272; citation omitted; emphasis added by *Tucker*).

Here, assuming Guilliot has established a prima facie case, Defendants present evidence individualized to Guilliot that demonstrates that preventing his access to a Rider-Waite tarot deck is the least restrictive means of furthering compelling governmental interests and have therefore carried their burden to demonstrate (1) that, even if the Court draws all reasonable inferences in favor of Guilliot, there are no genuine and material fact disputes and (2) that they are entitled to summary judgment on Guilliot's RFRA claim.

First, each reason cited by Defendants – rehabilitation; reducing recidivism; and prison security – is a legitimate governmental interest. *See, e.g.*, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (rehabilitation); *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (reducing recidivism); *Henthorn v. Swinson*, 955 F.2d 351, 353 (5th Cir. 1992) (prison security); *cf. Tanksley*, 2017 WL 3503377, at *6 ("But it is not enough for defendants to invoke security and rehabilitation in general terms. They bear the burden to show that compelling interests are served by the application of the anti-pornography prison regulations specifically to ... the particular inmate whose religious exercise is substantially burdened. Defendants must also show that denying

[Guilliot] an exception to the anti-pornography regulations is the least restrictive means of furthering the prison's compelling interests." (citation omitted)).

As applied to Guilliot's rehabilitation, as to reduce the chance he recidivates, Defendants offer the testimony of Dr. Caperton, a licensed psychologist and licensed sex offender treatment provider, who not only leads FCI Seagoville's sex offender treatment program but has also treated Guilliot. *See* Dkt. No. 28 at 143-72. Dr. Caperton testifies that

> [a]llowing Mr. Guilliot to possess images that contain adult or child nudity would be detrimental to his rehabilitation, as well as the rehabilitation of others like him, because the nude and pornographic images in the deck suggest ongoing problems with being overly interested or preoccupied by sex, which can also lead to problems with establishing healthy intimate relationships. Images of nude children can suggest continued problems with deviant sexual interests. Empirical research suggests that deviant sexual interests, sexual preoccupation, and intimacy deficits are dynamic risk factors that can increase the risk of sexual recidivism.

*Id.* at 148 (citation omitted). Dr. Caperton's testimony further reflects that Guilliot has been resistant to receiving sex offender treatment. *See id.* at 144-48, 155, 170, & 172.

As to prison security related specifically to the tarot deck Guilliot seeks, Martha Underwood, FCI Seagoville's current warden, testifies that images in the deck – containing "several drawn images of nude men, nude women, and partially nude children" and including "uncovered female breasts and female and male genitalia" – "violate BOP's ban on pornography" and that possession of these "materials would pose a threat to safety, security, and good order" because, among other reasons, "[t]here are approximately 800 sexual offenders housed at FCI Seagoville, all with varying

-15-

treatment needs. Depending on the nature and severity of their underlying crimes, some inmates are not even allowed to possess or view any images of children, let alone images of naked children." *Id.* at 204, 205. She further avers that "[u]nique items in prison" – such as "the Rider-Waite Tarot Deck[,which] would be very valuable and thus pose a greater risk, because of the nude and pornographic images in the deck" – "put the staff and inmates at risk and pose serious health, safety, and security concerns because inmates tend to trade them and misuse them, and having them in the institution tends to lead to theft, bartering, strong-arming, inmate exploitation, violence, and fights." *Id.* at 206.

Guilliot offers no evidence to counter this testimony.

Defendants have further shown that not allowing Guilliot access to this specific tarot deck is the least restrictive means to further these compelling interests. As another district court facing a similar situation explained,

> [i]f I accord a measure of respect to defendants' conclusion that pornography is counter-therapeutic for sex offenders, defendants have shown that prohibiting Tanksley from possessing the Initiatory Tarot is the least restrictive means of furthering Tanksley's rehabilitative needs in this regard. They have not barred him from possessing a tarot deck, or even from possessing a tarot deck that is specific to the Golden Dawn. They have, instead, prohibited him from possessing a tarot deck that includes a realistic full-frontal view of a nude boy about the same age as the child he assaulted. I see no reason to question the opinion of the DOC's chief psychologist that allowing Tanksley to have this tarot deck, and particularly this image, would be detrimental to his rehabilitation.

*Tanksley*, 2017 WL 3503377, at *8.

## Recommendation

The Court should grant Defendants D.J. Harmon, Dr. Jennifer Caperton, G.

Schanfish, and Dr. Kevin McDermott's motion for summary judgment and dismiss this action with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 19, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE